1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                  SOUTHERN DISTRICT OF CALIFORNIA
8

| | |
|---|---|
| ALBERTO C., | Case No.:  22-cv-1669-W-MMP |
| Plaintiff, | **REPORT AND RECOMMENDATION RECOMMENDING THE COURT REMAND FOR FURTHER PROCEEDINGS** |
| v. | |
| MARTIN O'MALLEY, Commissioner of Social Security,[1] | |
| Defendant. | |

## I.    INTRODUCTION

This Report and Recommendation is submitted to the United States District Judge Thomas J. Whelan pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

Plaintiff Alberto C. ("Plaintiff") seeks judicial review of the Commissioner of Social Security Administration's ("Commissioner" or "Defendant") decision denying Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. [ECF Nos. 1, 20.] Before the Court is the Parties' Joint Motion for Judicial Review of Final Decision of the

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Martin O'Malley is substituted for Kilolo Kijakazi, the former Acting Commissioner of Social Security, as the Defendant in this suit.

Commissioner of Social Security ("Joint Motion"). [ECF No. 20.] After careful consideration of the Parties' submissions, the administrative record, and the applicable law and for the reasons discussed below, the Court **RECOMMENDS** that the District Judge **REVERSE** the Commissioner's decision and **REMAND** the action for further proceedings.

## II.   BACKGROUND

### A.   Procedural History

On November 9, 2020, Plaintiff filed a Title II application for DIB, alleging disability beginning on January 1, 2017. *See* Administrative Record ("AR") 182. Plaintiff alleges that he suffers from spinal illness and permanent back problems. AR 202. The claim was denied initially on December 17, 2020. AR 85–89. Plaintiff requested reconsideration on February 24, 2021, which was denied on March 10, 2021. AR 90–92, 104–08. Plaintiff filed a written request for a hearing. AR 109.

On October 27, 2021, a telephonic hearing was held before Administrative Law Judge ("ALJ") Kathleen Scully-Hayes. AR 28. Plaintiff was represented by counsel and testified at the hearing. *Id.* In a written decision dated November 9, 2021, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 1, 2017 through the date of the ALJ's decision. AR 28–33.

On November 9, 2021, Plaintiff requested review by the Appeals Council. AR 179–81. The Appeals Council denied review of the ALJ's ruling on August 26, 2022, and the ALJ's decision therefore became the final decision of the Commissioner. AR 1.

On October 26, 2022, Plaintiff filed the instant action seeking judicial review by federal district court. [ECF No. 1.] On August 15, 2023, the Parties timely filed the present Joint Motion. [ECF No. 20.]

### B.   Plaintiff's Testimony at the Hearing

Plaintiff worked as a coin salesperson at Goldline International Inc., a precious metals investment firm. AR 47–48; *see also* AR 194–95, 203. From 2009 to 2012, Plaintiff worked at another precious metals investment firm Seacoast Inc., which Plaintiff described

as: "80% a desk job. 20% meeting the customers in person. 80% inside sales. 20% outside." AR 46–47. Plaintiff testified that his pain "got[] ten times worse since 2012 when [he] stopped getting the proper hospital visits." AR 62.

During the hearing, Plaintiff testified as follows:

> It started when I was 17. I had a bulging disc situation back when I was working a part-time job in the summer while I was going to San Diego State. It's been a degenerative situation ever since. I can't lift more than 5 or 10 pounds in each arm and carry it. I can't wear a backpack. After 10 minutes of washing the car, I have to stop because I get spasms. After 10 minutes of cooking in the kitchen, I have to stop. I can't hike. I can't walk more than probably three city blocks before I have to stop because of the pain, and it's degenerative and it's gotten worse, and anything that makes me have to sit at a desk or in a car for more than an hour, I get spasms and pain. And all those years I didn't have health insurance, I basically was taking a bottle of Aleve, playing with pain, and using medicinal holistic to help ease the pain, basically, those years I didn't have medical coverage . . . And I was doing acupuncture.

AR 49–50.

### C. The Record

Plaintiff's medical record consists of physician records, acupuncture visits, physical therapy visits, and X-ray and MRI records spanning from 2008 to 2012 and 2019 to 2021.

From February 4, 2008 to October 25, 2012, Plaintiff was seen at Ronald Reagan UCLA Medical Center by his Primary Care Physician Dr. Ted Hak. Beginning on July 28, 2011, Plaintiff reported hamstring pain. AR 382–83 (Plaintiff "strained L[eft] hamstrings" while playing for the company softball team.). At that visit, Plaintiff reported that taking ibuprofen multiple times per day was not alleviating the pain and requested "muscle relaxers." *Id.*

Between October 7, 2011 and September 26, 2012, Plaintiff sought treatment at Emperor's College of Traditional Oriental Medicine nearly weekly. AR 250–297. Across twenty-two visits, Plaintiff consistently complained of increasingly worsening lower back pain, to include tingling and sharp pain down the glutes and hamstrings. *Id.*; *see, e.g.*, AR 265, 269, and 289. In October 2011, Plaintiff initially reported low back pain from sitting

all day, AR 257, and glute pain concentrated on the right side, AR 273. Starting in May 2012, Plaintiff claimed he began experiencing glute pain on both sides and reduced effectiveness of treatments. *See* AR 281, 285 ("pain free for 2 days"), 287 ("Tx only lasts that night"), 289.

On March 14, 2012, Plaintiff returned to Dr. Hak "for lower back pain" and requested an X-ray. AR 390. On March 26, 2012, Plaintiff again returned to Dr. Hak and reported that he went to urgent care to obtain "an x-ray per his chiropractor's suggestion . . . to supposedly find out if he had sciatica." AR 391. At this visit, Plaintiff "complain[ed] about pain down both buttocks and chronic back pain especially after he finishes the power walk," and Dr. Hak found "bilateral back spasm" but Plaintiff had "full range of motion." AR 391. Dr. Hak advised [Plaintiff] to take "two Aleve twice a day" and ordered physical therapy. AR 392.

Plaintiff received an MRI on October 11, 2012, "demonstrat[ing] multilevel posterior disc bulging and short pedicles," "less spinal canal stenosis at L4-L5 and moderate to severe spinal canal stenosis at L3-L4," "a 5x6 mm probable synovial cyst protruding from the spinous process at L4-L5 toward the thecal sac contributing to severe spinal canal stenosis," and "[n]eural formina are narrowed bilaterally at multiple levels." AR 405. Reviewing Plaintiff's MRI results, Dr. Hak stated that the "MRI was consistent with a few levels of disc bulging and some spinal stenosis as well as facet hypertrophy and general arthritic changes." AR 393. Plaintiff again saw Dr. Hak on October 25, 2012, where Dr. Hak reported improvements with the use of prednisone and approved the continuance of "nonweightbearing exercise." AR 396.

Plaintiff has no medical records for seven years between November 2012 and October 2019. On November 11, 2019, Plaintiff saw Primary Care Physician Dr. Kristopher Yoon, stating that he was "[u]nable to stand for longer than 10–15 minutes," could "only walk for about 15 minutes," and could not "sit for prolonged periods of time." AR 397. On November 26, 2019, an X-ray showed "[m]ultilevel advanced degenerative changes of the lumbar spine . . . with multilevel grade 1 anterolisthesis and retrolisthesis."

AR 303. Plaintiff's April 13, 2020 X-ray showed no significant change from the November 2019 X-ray and found "mild chronic compression deformities" in the vertebral body of T12 and L1, and "mild grade retrolisthesis" of L2-3 and L3-4 with a lumbar spondylosis diagnosis. AR 422. Plaintiff also received an MRI on March 5, 2020, which showed "[d]isc osteophytes result[ing] in mild to moderate neural foraminal stenosis at several levels without nerve root compression with their respective foramina," AR 305, "[s]evere multilevel lumbar spondylosis," AR 308, "[m]ild grade 1 listhesis at several levels," *id.*, and "[s]evere Modic 1 discogenic degenerative marrow signal abnormality within L4 and L5." *Id.* Following these results, Plaintiff's new Primary Care Physician Dr. Ernso Eromo diagnosed Plaintiff with lumbar spondylosis and degenerative disc disease. AR 420.

On July 31, 2020, Dr. Eromo indicated that "he could not support clinically the notion that [Plaintiff] is permanently disabled" until Plaintiff attempted the recommended "[lumbar medical branch block] conservative care," was re-evaluated, and thereafter a doctor determined surgery was not considered a good option. AR 420–21.

Plaintiff also attended twenty-three physical therapy sessions between June 15, 2020 and June 23, 2021. AR 310–67. Plaintiff complained to Physical Therapist Dr. Elliot Smithson of lower back pain. *See id.* During this period, Dr. Smithson consistently reported that Plaintiff was motivated and his "rehab potential is good." AR 311, 314, 318, 332, 355, 358.

## III.    SUMMARY OF ALJ'S FINDINGS

### A.    The Five-Step Evaluation Process

To qualify for DIB under the Social Security Act, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for DIB are evaluated in accordance with a five-step sequential analysis. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); 20 C.F.R. §§

404.1520, 416.920. First, the ALJ must determine if the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, the ALJ must then determine if the claimant's alleged impairment is sufficiently severe to limit his ability to work. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Third, the ALJ determines whether the claimant's impairments or combination thereof meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If he does, he is disabled. 20 C.F.R. § 404.1520(d). If not, the ALJ then considers the claimant's residual functional capacity ("RFC"), which is used in the analysis at steps four and five. 20 C.F.R. § 404.1520(e). Fourth, the ALJ considers the claimant's past relevant work; if the claimant can do his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv), (f). Finally, if the claimant cannot do his past relevant work, the ALJ assesses the claimant's residual functional capacity, age, education, and work experience to determine if the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). At step five, the claimant will be considered disabled only if he cannot make the adjustment to other work. 20 C.F.R. § 404.1520(g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the sequential process proceeds to step five, the Commissioner bears the burden of proving that the claimant can make the adjustment to other jobs that exist in sufficient number in the national economy. *Id.*; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

**B.    The ALJ's Application of the Five-Step Process**

On November 9, 2021, ALJ Scully-Hayes issued a written decision in which she determined that Plaintiff was not disabled as defined in the Social Security Act. AR 28–33. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2017. AR 30.

At step two, the ALJ found "[t]hrough the date last insured, the claimant had the following medically determinable impairments: back degenerative disc disease and

obesity," but he "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months." AR 30–31 (citing 20 C.F.R. § 404.1521).

Because the ALJ found no severe impairments, she concluded the inquiry at step two and determined that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from January 1, 2017, the alleged onset date, through June 30, 2018, the date last insured." AR 33 (citing 20 C.F.R. § 404.1520(c)).

## IV.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may set aside the Commissioner's denial of Social Security benefits only if that decision "was not supported by substantial evidence or is based on legal error." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citing *Ford v. Saul*, 950 F.3d 1141, 1153–54 (9th Cir. 2020)). Under the substantial-evidence standard, courts look to the existing administrative record and ask "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). The standard requires "more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Glanden*, 86 F.4th at 843 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).

The substantial evidence standard is "a highly deferential standard of review," *Valentine*, 574 F.3d at 690. When the administrative record is considered as a whole and "'the evidence is susceptible to more than one rational interpretation,' the ALJ's decision must be affirmed." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)).

In contrast, an error is not harmless at step two and requires remand, where the ALJ has not factored in all of Plaintiff's impairments in subsequent steps. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *Ormberg v. Astrue*, 254 F. App'x 589, 590–91 (9th Cir. 2007) (finding an error not harmless because the impairment "imposed additional

functional limitations not considered by the ALJ at the later steps of the process"); *see also* *Lakonnie M. v. Kijakazi*, No. 22cv985, 2023 WL 6378047, at *8 (S.D. Cal. Sept. 27, 2023) (For an error at step two to be harmless, "the ALJ must consider how the combination of the impairments affect the claimant's ability to perform basic work activities, and incorporate that consideration into the RFC determination."). Nor is an error harmless when it affects the ultimate disability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006) (holding that a court cannot consider excluding testimony as "harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination").

## V.    ANALYSIS

Plaintiff contends that the ALJ committed reversible error due to her "(1) failure to apply [Social Security Ruling ("SSR")] 85-28 to end the hearing and analysis at step two of the five-step sequential process; (2) failure to properly weight and credit [Plaintiff's] subjective symptoms; (3) use of a lack of medical records due to poverty against [Plaintiff]; (4) . . . failure to complete the record because of the ALJ's failure to order even a single Consultative Examination, Medical Interrogatory, or calling of an impartial Medical Expert where the ALJ admits the record was incomplete due to the poverty of the claimant." [ECF No. 20 at 4.]

In response, Defendant argues that (1) Plaintiff carried the burden to "present evidence showing he had a severe impairment" at step two and "[t]he ALJ here reasonably considered the sparse treatment record which supported the finding that Plaintiff's degenerative disc disease was medically determinable, but did not significantly limit his ability to perform basic work activities," [*id.* at 12]; (2) the ALJ discounted Plaintiff's symptom testimony after providing "clear and convincing" reasons that are supported by substantial evidence, [*id.* at 22]; (3) "the ALJ did not discount Plaintiff's allegations simply because he lacked funds to pay for treatment" as Plaintiff "never testified that during this treatment gap he was unable to seek any professional medical treatment whatsoever due to a lack of funds," and any error would be harmless because "the ALJ relied on additional

rationale when discounting Plaintiff's allegations," [*id.* at 27–28]; and (4) "[s]ubstantial evidence supports the ALJ's reasonable findings, and Plaintiff has not shown any error, let alone a harmful error." [*Id.* at 34–35.]

Based on a review of the record, the Court finds the matter should be remanded for further proceedings as the ALJ should have continued the analysis beyond step two, provide more clear reasons for rejecting Plaintiff's symptom testimony, and attempt to further develop the record. *See Garrison v. Colvin*, 759 F.3d 995, 1015–16 (9th Cir. 2014). The Court addresses the Parties' arguments in turn.

**A.     The Five-Step Evaluation Should Have Continued Beyond Step Two**

Plaintiff argues that (1) step two requires only a finding that his impairments were de minimis; (2) the ALJ failed to perform an analysis of his basic work activities and instead improperly considered daily activities; and (3) the ALJ did not properly consider his subjective pain testimony.

Defendant contends that the ALJ made no error because it was Plaintiff's burden to make a threshold showing that his medically determinable impairments significantly limited his ability to perform basic work activities. Specifically, because of the "sparse treatment record" and evidence that Plaintiff remained active, the ALJ reasonably determined that Plaintiff did not have any severe impairments. The Court finds that under controlling Ninth Circuit precedent, the ALJ should have completed the analysis beyond step two.

1.     De Minimis Finding

"Step two inquires whether the claimant had severe impairments during the period for which he seeks disability benefits." *Glanden*, 86 F.4th at 843. A "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The "ability to do basic work activities," in turn, is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). "An impairment is not severe if it is merely 'a slight abnormality . . .  that has no more than a minimal effect on the ability to

do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting SSR 96-3p, 1996 WL 374181 (July 2, 1996)).

The purpose of step two's "threshold showing" requirement is "to 'identify [ ] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account.'" *Glanden*, 86 F.4th at 843 (quoting *Bowen*, 482 U.S. at 147, 153). "[C]laimants need only make a de minimis showing for the analysis to proceed past [step two] and that properly denying a claim at step two requires an unambiguous record showing only minimal limitations." *Id.* at 844 ("[I]t is relatively rare for an ALJ to deny a claim at step two. . . ."); *see also Buck*, 869 F.3d at 1048 ("Step two is merely a threshold determination meant to screen out weak claims."); *Ortiz v. Comm'r of Soc. Sec.*, 425 F. App'x 653, 655 (9th Cir. 2011) ("Ample authority cautions against a determination of nondisability at step two.").

Thus, "once a claimant presents evidence of a severe impairment, an ALJ may find an impairment or combination of impairments 'not severe' at step two '*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Glanden*, 86 F.4th at 844 (quoting *Webb*, 433 F.3d at 686); *see also* SSR 85-28, 1985 WL 56856 (Jan. 1, 1985) (Step two's purpose "is to do no more than allow the [Commissioner] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working" and a non-severe finding must be "clearly established by medical evidence."); *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994) ("An overly stringent application of the severity requirement . . . violates the statute by denying benefits to claimants who do meet the statutory definition of disabled.").

If the plaintiff has submitted evidence of a severe impairment, courts "analyze an ALJ's step-two denial by asking 'whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments.'" *Glanden*, 86 F.4th at 844 (quoting *Webb*,

433 F.3d at 687). The Ninth Circuit, however, has expressly reiterated that "[a]n inconclusive medical record precludes denial at this step." *Id.* Rather, if the ALJ "is unable to determine clearly the effect of an impairment . . . on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. Rather, it should be continued." *Id.* (quoting SSR 85-28, 1985 WL 56856 (Jan. 1, 1985)). Here, the ALJ made a finding that Plaintiff's alleged back degenerative disc disease and obesity were medically determinable impairments, AR 30, and "after considering the evidence of record," the ALJ found Plaintiff's "medically determinable impairment[s] could have reasonably been expected to produce the alleged symptoms." AR 32. Based on recent Ninth Circuit caselaw, that determination overcomes "the low hurdle of screening for groundless claims," and the ALJ should have proceeded with the sequential analysis. *Glanden*, 86 F.4th at 848. Furthermore, Defendant bases much of its argument on Plaintiff's "sparse treatment record," but the Ninth Circuit has recognized that incomplete record does not constitute substantial evidence to reject a claim at step two. *Id.*; *Webb*, 433 F.3d at 687.

In *Glanden*, the claimant had a two-and-a-half-year gap in medical treatment records during his alleged disability period, which is significantly less than the seven-year gap in this case, but the Ninth Circuit's holding is instructive in this case. *Glanden*, 86 F.4th at 844. Because Glanden produced evidence "that both preceded and succeeded the gap in his treatment," the Ninth Circuit found him to have "made the requisite showing to meet step two's low bar." *Id.* at 844. Here, Plaintiff produced medical records from 2011 to 2012 and from 2019 to 2020, which included evidence supporting the ALJ's finding that Plaintiff's "medically determinable impairment[s] could have reasonably been expected to produce the alleged symptoms." AR 32. For the purposes of a review under step two, Plaintiff has made the requisite showing to meet step two's "low bar." *See Glanden*, 86 F.4th at 844.

To support the contention that the ALJ did not err, Defendant further points to portions of the ALJ's summary of the medical record that "showed Plaintiff's reports of back pain did not significantly limit his ability to perform basic work activities." [ECF No.

20 at 13.] For example, Defendant identifies Plaintiff's examination findings, power walking, and requesting conservative treatment as supporting a finding that "he did not have significant difficulty performing basic walking (or other) activities." [*Id.*] The Court is not persuaded by Defendant's argument, because the ALJ did not make such a finding, and the Court cannot affirm the ALJ's decision on that basis. *Garrison*, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she] did not rely."); *see also Galeck v. Berryhill*, No. 18-cv-00131, 2018 WL 4961651, at *5 (C.D. Cal. Oct. 12, 2018) (quoting *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225 (9th Cir. 2009)) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

In this case, there is not a "total absence of objective evidence of severe medical impairment" that is required "to affirm 'a finding of no disability at step two.'" *Ortiz*, 425 F. App'x at 655 (quoting *Webb*, 433 F.3d at 688). The ALJ's finding based on the evidence that Plaintiff's impairments could have reasonably been expected to produce the alleged symptoms along with the medical record is sufficient to satisfy the requirements of step two. Accordingly, the Plaintiff satisfied the de minimis showing.

## 2. Subjective Symptom Testimony

The ALJ denied Plaintiff's claim as non-severe because she found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision." AR 32. Specifically, the ALJ found Plaintiff's statements regarding the severity of his symptoms "inconsistent because the medical record contains imaging regarding his lumbar impairment in 2012 but a gap in medical treatment for approximately 7 years," "[t]he record does not contain evidence during the period at issue," and "the claimant engaged in some work activity during 2017, albeit appearing to be under substantial gainful activity." *Id.*

/ /

a.   Applicable Law

In conducting the step two analysis, if medical evidence alone is not sufficient to establish the severity of an impairment, an ALJ may look to a claimant's symptom testimony. *Webb*, 433 F.3d at 688 ("Credibility determinations do bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions."). The ALJ applies a two-step process for evaluating an individual's statements regarding symptoms. SSR 16-3p, 2017 WL 5180304 (March 28, 2016). To support his claim, a claimant must provide evidence "that [his] impairments could reasonably have caused some degree of [the symptoms]." *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996); *id.* (The Commissioner first "determine[s] whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms."). "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc)); *Garrison*, 759 F.3d at 1014 (quoting *Smolen*, 80 F.3d at 1282) ("[T]he claimant is *not* required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"). Furthermore, if there is no affirmative evidence that the claimant is malingering, "the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing,'" *Reddick*, 157 F.3d at 722 (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) and *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)), and specifically "state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Trevizo v. Berryhill*, 862 F.3d 987, 1001 (9th Cir. 2017) (To discredit a claimant's testimony, "the ALJ was required to provide specific, clear, and convincing reasons to discount the alleged severity of Trevizo's

subjective symptoms and pain."); *Bunnell*, 947 F.2d at 346 ("[T]he adjudicator must specifically make findings" that are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'") (quoting *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991)). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ "evaluate[s] the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult . . ." SSR 16-3p, 2017 WL 5180304 (March 28, 2016). To do so, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*; *see also Smolen*, 80 F.3d at 1290 (citing 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991); SSR 86-8, 1986 WL 68636 (Jan. 1, 1986); SSR 88-3c, 1988 WL 236022 (Jan. 1, 1988); 20 C.F.R. § 404.1529(d)(2)) ("[T]he ALJ must consider the combined effects of all of the claimant's impairments on her ability to function" and "the claimant's subjective symptoms, such as pain or fatigue."). SSR 16-3p specifically provides the "[i]mportant information about symptoms recorded by medical sources and reported in the medical evidence may include . . . daily activities." 2017 WL 5180304 (March 28, 2016). The Ninth Circuit has cautioned that "[w]hile the ALJ must consider the level of consistency between symptom testimony and the medical evidence, not all inconsistencies are 'sufficient to doom [a] claim as groundless under the de minimis standard of step two." *Glanden*, 86 F.4th at 846 (quoting *Webb*, 433 F.3d at 688).

The Ninth Circuit has also indicated that the specific, clear and convincing standard must be evaluated in the context of step two's de minimis requirement. *Glanden*, 86 F.4th at 847 (Evidence of drug-seeking behavior would be a clear and convincing reason to

discount claimant testimony at step four, but "do[es] not amount to clear and convincing reasons to reject [claimant's] testimony at this preliminary stage.").

b.      Analysis

Plaintiff argues that the ALJ did not properly analyze Plaintiff's pain and subjective symptoms because "the ALJ decision [ ] makes zero attempts to reject the claimant's testimony about the severity of his symptoms" by providing the required clear and convincing reasons. [ECF No. 20 at 19–21 (internal quotations and citations omitted).] Because the ALJ determined that Plaintiff's "medically determinable impairments could have reasonably been expected to produce the alleged symptoms"—a finding that is not contested by either party—the first prong of the ALJ's inquiry regarding Plaintiff's subjective complaints is satisfied. AR 32; [*Id.*; *see also id.* at 14 (Defendant states that "there is no dispute that imaging established that Plaintiff had a back condition.")]. Furthermore, the record and the ALJ's findings make no reference to any evidence of malingering. As such, to reject Plaintiff's symptom testimony, clear and convincing reasons were required.

The ALJ's written opinion heavily relies on the seven-year gap in medical treatment to find the Plaintiff's statements were inconsistent with the medical records. AR 32. The Ninth Circuit has recognized that even "[i]f 'the medical record paints an incomplete picture of [the claimant's] overall health during the relevant period,' there can nonetheless be 'evidence of problems sufficient to pass the de minimis threshold of step two.'" *Glanden*, 86 F.4th at 844 (quoting *Webb*, 433 F.3d at 687). Moreover, a "lack of medical evidence cannot form the sole basis for discounting pain testimony." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (Lack of medical evidence is only one "factor that the ALJ can consider in his credibility analysis.").

"An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms." *Jeanette R. v. Kijakazi*, 620 F. Supp. 3d 1127, 1138 (E.D. Wash. 2022) (citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)). However, the

1  Commissioner must take into account the "good reasons" a claimant provides for failing to
2  obtain treatment. *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

3  In the hearing, Plaintiff testified that:

4  And all those years I didn't have health insurance, I basically was taking a
5  bottle of Aleve, playing with pain, and using medicinal holistic to help ease
   the pain, basically, those years I didn't have medical coverage.
6

7  AR 50. The ALJ acknowledged that "[t]he claimant testified the years he did not have
8  insurance, he was using Aleve and holistic medicine, and acupuncture," and his treatments
9  included massage and epidurals. AR 32. Defendant argues that Plaintiff's alleged lack of
10 treatment undermines his credibility, because "Plaintiff never testified that during this
11 treatment gap he was unable to seek any professional medical treatment whatsoever due to
12 a lack of funds" and "offered no explanation at all as to why he did not have, or attempt to
13 get, insurance for that seven year gap, or how he was ultimately able to re-engage with
14 treatment in 2019." [ECF No. 20 at 27.]

15 While Plaintiff argues he did not have health insurance because he was no longer
16 working and could not afford it, [*id.* at 28], that evidence was not specifically presented to
17 the ALJ and is not dispositive. Additionally, the Plaintiff's testimony demonstrated that he
18 was seeking holistic health treatments, such as acupuncture and massage therapy, during
19 the gap period despite his claimed lack of insurance. Notably, the ALJ did not inquire into
20 the frequency or result of those treatments during the disability period. Furthermore, the
21 ALJ did not mention any of these arguments in her decision, and the Court can "review
22 only the reasons provided by the ALJ." *Garrison*, 759 F.3d at 1010. Because the ALJ did
23 not clearly identify these reasons in her decision, they cannot constitute substantial
24 evidence.

25 Plaintiff also contends the ALJ erred in considering his activities of daily living in
26 her step two analysis because "medical evidence alone is evaluated in order to assess the
27 effects of the impairment(s) on ability to do basic work activities." [ECF No. 20 at 7 (citing
28 SSR 85-28, 1985 WL 56856 (Jan. 1, 1985)).] That argument directly contradicts the

procedures set forth in SSR 16-3p and, if accepted, would undermine the ALJ's ability to properly evaluate claimant's symptom testimony in step two. *See* 2017 WL 5180304 (March 28, 2016). Consideration of evidence, such as activities of daily living, is required to both evaluate a claimant's statements and for the ALJ to determine a claimant's ability to perform basic work activities. *See* SSR 85-28, 1985 WL 56856 (Jan. 1, 1985).

Ultimately, the Court finds that the ALJ did not articulate clear and convincing reasons to reject Plaintiff's symptom testimony to support a denial at step two based on the 2012 records, which predated the disability period by five years. Plaintiff alleges that he suffers from degenerative disc disease "that is getting progressively worse," AR 90, and alleges a disability starting in 2017. Plaintiff's active lifestyle in 2012 does not necessarily preclude a condition from increasing in severity over a five-year period, which is supported by substantial evidence in the record for a finding of severity at step two. *See, e.g.*, AR 252–297. *Compare* AR 393 (Dr. Hak's October 17, 2012 patient notes indicating that Plaintiff's "MRI was consistent with a few levels of disc bulging and some spinal stenosis as well as facet hypertrophy and general arthritic changes" and "found left-sided pain and muscle spasm with distal radiation") with AR 303 (Plaintiff's November 26, 2019 X-ray indicating "[m]ultilevel advanced degenerative changes of the lumbar spine"). The five-year gap between the 2012 records and the alleged disability period makes the earlier records less persuasive and relevant to the subjective symptoms during the relevant time period under a clear and convincing standard.

The ALJ also noted Plaintiff "engaged in some work activity during 2017," but it was not explained how limited driving for Uber and Lyft between 2015 and 2017 was inconsistent with Plaintiff's statements about the severity of his condition from January 1, 2017 to June 30, 2018.

Defendant cites to Dr. Eromo's visit note from July 2020, stating that he "could not support clinically the notion that [Plaintiff] is permanently disabled," as substantial evidence to Plaintiff's account of his symptoms. AR 420. Those notes taken in context with the Plaintiff's course of treatment in 2020 do not address Plaintiff's past symptoms, and

the ALJ makes no reference to those findings in her order, meaning the Court cannot consider that evidence. *Garrison*, 759 F.3d at 1010.

Additionally, the ALJ's findings provide a summary of the medical records from 2011 through 2012 but lacks an explanation of how those records meet the clear and convincing standard to discount the Plaintiff's testimony under a step two analysis. AR 32–33; [ECF No. 20 at 22–23.] The Ninth Circuit has made clear that reciting the record is not sufficiently specific, clear, and convincing to discredit subjective symptom testimony. *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)) ("[P]roviding a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible."). Instead, "the ALJ was required to 'point to specific facts in the record which demonstrate that [Plaintiff] is in less pain than [he] claims.'" *Vasquez*, 572 F.3d at 592 (quoting *Dodrill*, 12 F.3d at 918); *Dodrill*, 12 F.3d at 918 ("It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible."); *Brown-Hunter*, 806 F.3d at 493 (The Ninth Circuit has "ma[de] clear that we may not take a general finding.").

In sum, the record in this case needs to be further developed to meet the clear and convincing standard at step two. Taken as a whole, the record precludes a finding that Plaintiff's "medical impairments are so slight that it is unlikely [he] would be found to be disabled even if [his] age, education, and experience were taken into account" and allow for the analysis to stop at step two. *Bowen*, 482 U.S. at 153; *Glanden*, 68 F.4th at 847. Accordingly, the Court finds the ALJ should have continued with the Five-Step evaluation process beyond step two.

### B.    Failure to Complete the Record

Plaintiff additionally asserts that the ALJ erred by failing to complete the record. The Ninth Circuit has held that, although a plaintiff "ultimately bears the burden of establishing his disability, . . . the ALJ ha[s] an affirmative duty to supplement [the claimant's] medical record, to the extent it was incomplete, before rejecting [the

claimant's] petition at so early a stage in the analysis." *Webb*, 433 F.3d at 687. In response, Defendant argues that (1) "[t]he record here was sparse because Plaintiff did not obtain any treatment for years leading up to the relevant period, during the brief relevant period, or for more than a year after his disability insurance expired"; and (2) "[t]he ALJ could do nothing to supplement the record with probative evidence in this case." [ECF No. 20 at 31.]

This affirmative duty is "triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." *Webb*, 433 F.3d at 687. Here, the ALJ stated that "[t]here are no treatment records during the period at issue between January 1, 2017 and the claimant's date last insured, June 30, 2018, so there is insufficient evidence to find the claimant had a severe back impairment during this period." AR 33. By the ALJ's own findings and Defendant's arguments, AR 32; [ECF No. 20 at 12 ("sparse treatment records")], the duty to supplement the record was triggered. *See Webb*, 433 F.3d at 687 (emphasis added) (citing 20 C.F.R. § 404.1512(e)(1)) ("[T]he ALJ had an affirmative duty to supplement Webb's medical record, to the extent it was incomplete, *before* rejecting Webb's petition at so early a stage in the analysis."). The Court agrees the record is sparse and recognizes it may be difficult to develop it further, but the Plaintiff testified to his continued holistic health treatment in which records could be requested.

The Court rejects the Plaintiff's argument that a consultative examination should have been ordered in this case based on this record. [ECF No. 20 at 29–30.] Given the large time gap in medical records, including the disability period in question, a consultation multiple years later would likely not be helpful to the ALJ in evaluating the past claims of severe impairment.

### C.   Basic Work Activities Finding

Additionally, Plaintiff argues that the ALJ erred because step two requires "an evaluation of the effects of the impairment(s) on [Plaintiff's] ability to do basic work activities. . . ." [ECF No. 20 at 7 (citing SSR 85-28, 1985 WL 56856 (Jan. 1, 1985) (Policy

Clarification section)).] In the ALJ's written decision, she concluded "that the claimant did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities" after "consider[ing] all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." AR 31. The ALJ then explained why she discounted Plaintiff's symptom testimony, supporting her finding. As such, the ALJ performed the evaluation as required and Plaintiff does not point to any rule or case that requires more detail from the ALJ. The Court finds no error in this part of the ALJ's analysis.

### D.   Remand

Defendant argues that any of the ALJ's errors would be harmless because "the ALJ relied on additional rationale when discounting Plaintiff's allegations." [ECF No. 20 at 28.] An error is not harmless if "it affect[s] the ALJ's determinations in subsequent steps of the sequential analysis and may have influenced the ultimate determination of [the claimant's] nondisability status." *See Buell v. Berryhill*, 716 F. App'x 600, 602 (9th Cir. 2017). Because the ALJ prematurely ended the analysis at step two and failed to supplement the record, there is no way for the Court to know if these errors were outcome determinative. *Glanden*, 86 F.4th at 848; *Stout*, 454 F.3d at 1055; *Tadesse v. Kijakazi*, No. 20-16064, 2021 WL 5600149, at *1 (9th Cir. Nov. 30, 2021) ("Although an error at step two may be considered harmless where, as here, the ALJ moves to the next step in the analysis, the decision must reflect that the ALJ considered any limitations posed by the impairment at either step four or step five."). Accordingly, they cannot be harmless error.

## V.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, (2) **REVERSING** the Commissioner's decision, and (2) **REMANDING** this case for further proceedings consistent with the findings presented herein.

/ /

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the court and served on all Parties no later than **February 20, 2024**. The document should be captioned "Objections to Report and Recommendations."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all Parties no later than **March 5, 2024**. The Parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: February 6, 2024

HON. MICHELLE M. PETTIT
United States Magistrate Judge